Manfred P. Muecke (SBN: 222893)
mmuecke@bffb.com
Patricia Syverson (SBN: 203111)
psyverson@bffb.com
Bonnett Fairbourn Friedman & Balint PC
600 West Broadway, #900
San Diego, CA 92101
Telephone: (619) 798-4292
Fax: (602) 274-1199

Andrew S. Friedman (AZ 005425)
(*Pro Hac Vice* pending)
afriedman@bffb.com
Francis J. Balint, Jr. (AZ 007669)
(*Pro Hac Vice* pending)
fbalint@bffb.com
Bonnett Fairbourn Friedman
 & Balint PC
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199

Adam M. Moskowitz (FL 984280)
(*Pro Hac Vice* pending)
adam@moskowitz-law.com
Howard M. Bushman (FL 0364230)
(*Pro Hac Vice* pending)
howard@moskowitz-law.com
Joseph M. Kaye (FL 117520)
(*Pro Hac Vice* pending)
joseph@moskowitz-law.com
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA DURKEE, individually and on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>ALASKA AIRLINES, INC.,<br><br>   Defendant | Case No.: **'19CV1071 AJB JLB**<br><br>**CLASS ACTION COMPLAINT** |

For her Complaint against Defendant Alaska Airlines, Inc. ("Alaska"), Plaintiff Andrea Durkee ("Plaintiff"), on behalf of herself and all others similarly situated, by her undersigned attorneys, alleges as follows:

## **INTRODUCTION**

1.      This putative class action involves Alaska's solicitation of the sale of travel insurance products to its passengers. At the point of air travel purchase on its website, Alaska strongly encourages its passengers to purchase the travel insurance from its "preferred provider" Allianz Global Assistance ("AGA"), a subsidiary of Allianz SE. Indeed, a prospective Alaska passenger cannot purchase a ticket from Alaska without affirmatively electing to purchase or to decline the travel insurance product through AGA.

2.      In connection with such offer and sale of such third-party travel insurance products by AGA, Alaska simultaneously represents itself (a) to be acting as the Alaska passenger's agent, and (b) to be serving no role beyond communicating AGA's separate offer of the travel insurance products.

3.      Specifically, Alaska in its Contract of Carriage represents that, to the extent it "makes arrangements for a Passenger with any third party to provide any services other than Carriage by air…," such as the purchase of travel insurance services from third-party provider AGA, Alaska agrees to serve as the "Passenger's agent."

4.      On its website, meanwhile, Alaska describes "two easy ways to purchase travel insurance," either (a) "Get it while buying your ticket," or (b) "Add it after buying your ticket." Regardless, the solicited passenger is compelled to elect whether to purchase travel insurance from AGA when completing purchase of air travel directly from Alaska via Alaska's website. Pointedly, Alaska specifically confirms (a) that the travel insurance coverage is being "recommended, offered and sold" not by Alaska, but by AGA, and (b) that Alaska itself is not providing or underwriting any travel insurance product.

5.     When the Alaska passenger agrees to purchase the travel insurance product at checkout on Alaska's website, the purchase price – although paid through Alaska – is set out as a distinct line item on the purchaser's credit card statement. This directly contrasts with the base fare and other related add-ons, such as seat upgrades, which are provided by Alaska and are included in the total amount charged by Alaska.

6.     Accordingly, a reasonable Alaska passenger like Plaintiff is given the impression that, although payment is being made through Alaska as the passenger's agent, the travel insurance product is being purchased from AGA at the pass-through cost. This, it turns out, is very much a false impression.

7.     Unbeknownst to the purchaser, the price of the travel insurance product is materially increased to fund the payment of an undisclosed commission or kickback to Alaska. Nowhere does Alaska disclose in its ticket contract or on its website that the purchase price of the travel insurance product includes a payment to Alaska.

8.     Accordingly, consumers like Plaintiff pay materially more for the travel insurance product than they otherwise should have, since AGA pays a significant portion of the premium to Alaska as undisclosed remuneration.

9.     To the extent Alaska is acting as the Alaska passenger's agent in connection with the sale of the travel insurance services, its receipt of the undisclosed payments in connection with the travel insurance products constitutes a breach of the universally recognized fiduciary duties due from agent to principal. Under principles of agency law so widely accepted as to be codified in the Restatement of Law, an agent who, without the knowledge of the principal, receives a material benefit in connection with, or because of, a transaction conducted for the principal, has a duty to pay that benefit over to the principal even though otherwise it has acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount. Restatement Agency (Third) 8.02, cmt. e

("The principal may recover any material benefit received by the agent through the agent's breach, the value of the benefit, or proceeds of the benefit retained by the agent.").

10.     Alternatively, Alaska's receipt of the undisclosed remuneration on the travel insurance products constitutes an unfair and deceptive business practice, warranting restitution under California's Unfair Competition Law ("UCL"), Cal. Business & Professions Code §17200 *et seq*., in the amount of such undisclosed kickbacks.

## PARTIES

11.     Plaintiff is a resident of the state of California, currently residing in San Diego, California.

12.     For diversity purposes, Plaintiff is a citizen of California.

13.     Alaska is a Delaware corporation and subsidiary of Alaska Air Group, Inc., with its headquarters and principal place of business in Seattle, Washington.

14.     For diversity purposes, Alaska is a citizen of Washington.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this class action under 28 U.S.C.§1332(d)(2)(A) because the proposed Class consists of 100 or more members and the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of costs and interest. Additionally, at least one Class member is a citizen of a State different than Alaska.

16.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because the challenged practices are alleged to have been committed in this District and Alaska regularly conducts business in this District.

## FACTUAL ALLEGATIONS
### Alaska Voluntarily Assumes an Agency Relationship with Respect to Services other than Carriage by Air

17.    In its Contract for Carriage[1], Alaska lists the applicable terms and conditions governing the air travel and baggage delivery for its customers.

18.    In its Contract for Carriage, Alaska specifically agrees that it will serve as the "Passenger's agent" to the extent it makes any arrangements on behalf of its passengers for third-party services, such AGA's travel insurance products:

> *If Alaska makes arrangements for a Passenger with any third party to provide any services other than Carriage by air*, or issues a Ticket or voucher relating to transportation or services (other than Carriage by air) provided by a third party such as hotel reservations or car rental, *Alaska acts only as Passenger's agent in doing so*. The terms and conditions of the third party service provider will apply.

Alaska Contract for Carriage Rule 3(O) (emphasis added).

19.    Such an assumption of agency confers fiduciary duties by the agent to the principal, including the fiduciary duties of loyalty, good faith, full disclosure, and to account. As famously stated of fiduciaries by Judge Cardozo, "Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (Cardozo, C.J.).

20.    In voluntarily assuming agency duties owed to passengers limited to the context of procuring third party insurance products, Alaska owed a fiduciary duty to disclose to Alaska passengers, including Plaintiff, any arrangement it has with AGA that materially affected the price of the travel insurance product purchased through AGA.

21.    In voluntarily assuming agency duties owed to passengers limited to the context of procuring third party insurance products, Alaska owed a fiduciary duty to disclose to Alaska passengers, including Plaintiff, its receipt of

---

[1]    Alaska Airlines, Inc. Contract of Carriage; https://www.alaskaair.com/content/legal/contract-of-carriage/rule-3 (*last accessed on June 7, 2019*)

4

remuneration or any other material benefit in connection with the sale of travel insurance product.

22.     In voluntarily assuming agency duties owed to passengers limited to the context of procuring third party insurance products, Alaska owed a fiduciary duty to account to Alaska passengers, including Plaintiff, for its receipt of remuneration from AGA in connection with the sale of travel insurance product.

### Alaska's Deceptive and Unfair Misrepresentation of a Pass-Through Purchase

23.     Alaska in multiple places in its websites emphasizes that Alaska itself provides no travel insurance services. In the FAQ for AGA travel insurance applicable to Alaska, entitled "Who provides the insurance for these programs?", AGA explains:

> Insurance benefits underwritten by BCS Insurance Company, Jefferson Insurance Company or Nationwide Mutual Insurance Company and Affiliated Companies, depending on insured's state of residence and plan type. Plan(s) may not be available to residents of all states. Allianz Global Assistance and Allianz Travel Insurance are brands of AGA Service Company. AGA Service Company is the licensed producer and administrator of these plans and an affiliate of Jefferson Insurance Company. The insured shall not receive any special benefit or advantage due to the affiliation between AGA Service Company and Jefferson Insurance Company. Non-insurance benefits/products are provided and serviced by AGA Service Company. Consumer is responsible for charges incurred from outside vendors for assistance or concierge services. Contact AGA Service Company at 800-284-8300 or 9950 Mayland Drive, Richmond, VA[.][2]

24.     AGA's website also includes a page, entitled "About Us," which describes AGA as the provider of the offered travel insurance products:

---

[2] https://www.etravelprotection.com/alaska/faq (*last accessed* on June 7, 2019)

**About Us**

**"Our tagline says it all: *'How can we help?' We spend every day trying to figure out how we can help more people.'*** - Mike Nelson, Chief Executive Officer, Americas and Global Travel

We're a world leader in the travel insurance and assistance industry because we really do help people—anytime, anywhere.

As a principal provider of travel insurance, corporate assistance, and concierge services, we can help you find solutions to any travel-related problem. Our partners number in the thousands and include travel agencies, airlines, resorts, websites, event ticket brokers, corporations, universities and credit card companies

Our parent company is Allianz SE, the world's largest diversified insurance company that has been helping protect the fabric of America for more than 100 years—insuring the Wright Brothers' flight, the construction of the Golden Gate Bridge, and many Hollywood movies. Thanks to Allianz SE's scale, we can provide innovative products with worldwide protection at a competitive rate.

Globally, we have 36 offices and a presence in 76 countries so you can count on us to be there if you need help. We're over 17,600 associates strong, can communicate in 70 languages, and have a world-wide network of nearly 70,000 pre-screened medical facilities—all to give you the best care, anywhere your journey takes you.[3]

25.    Alaska's failure to disclose the remuneration it receives on the sale of travel insurance products purchased by Alaska passengers amounts to a deceptive and unfair trade practice, for Alaska's actions reasonably lead its passengers to believe that although payment is made through Alaska, the travel insurance product is being purchased from third-party AGA at a pass-through cost. This false impression is given by, among other things, (a) Alaska's disavowal of rendering any services with respect to the recommending, offering or selling any travel

---

[3] https://www.etravelprotection.com/alaska/about-us (*last accessed* on June 7, 2019)

insurance product, (b) Alaska's offer of a choice to buy the travel insurance product "[d]uring the process of buying your ticket of alaskaair.com" or "separately, "after purchasing your tickets," (c) Alaska's use of a separate line-item charge for the travel insurance product -- even when it is purchased during the process of buying the ticket on alaskaair.com. In addition, Alaska's representation in the ticket contract – that to the extent it has any role in the arrangements for travel insurance services, it is acting as the passenger's agent -- **reinforces** the misleading impression that the travel insurance product is being sold on a pass-through basis, since a reasonable consumer would not understand its own agent to be receiving remuneration from counterparties like AGA.

### Alaska's Remuneration in Connection with the Sale of Travel Insurance

26.     At pages 70–71 of its 2017 Form 10-K, Alaska admits that it receives "commissions from car and hotel vendors and sales of travel insurance," as part of "Other" revenue.[4]

27.     Notably, any reference to commissions specifically from "sales of travel insurance" is conspicuously absent in its 2018 Form 10-K filing.[5] Yet, revenue Alaska generates from its undisclosed commissions from sales of travel insurance appears to be categorized as "Other revenue." At page 71 of its 2018 Form 10-K filing, Alaska characterizes these services as distinct from air travel services provided to Alaska passengers which is consistent with the allegations herein.

> "The Company also earns other revenue for lounge memberships, hotel and car commissions, and certain other immaterial items *not intrinsically tied to providing air travel to passengers*." (emphasis added)

[4] Alaska Air Group, Inc., Annual Report (Form 10-K), at 70-71 (Feb. 14, 2018)
[5] Alaska Air Group, Inc., Annual Report (Form 10-K), at 71-72 (Feb. 15, 2019)

**Plaintiff's Transactions**

28.   On or about July 13, 2017, Plaintiff utilized Alaska's website to purchase roundtrip air carriage between San Diego and St. Louis using miles she had accrued and purchased from her Alaska Mileage Plan.

29.   After selecting her dates for travel and any seats, Plaintiff was directed to the final steps of her air travel purchase at Alaska's webpage titled "Checkout: Review and complete payment." Here, Plaintiff was directed to confirm flight details and provide payment for her flight.

30.   Alaska did not enable Plaintiff to complete her flight purchase until she affirmatively elected to purchase or decline travel insurance offered by AGA.

31.   Based on her belief that she was purchasing the travel insurance product without any undisclosed remuneration to Alaska, Plaintiff paid $17.00 by credit card charge for the AGA travel insurance product.

32.   Plaintiff's subsequent credit card statement, a true and accurate copy of which is attached as **Exhibit A,** reflected a separate charge for her purchase of the AGA travel insurance product.

33.   On or about November 10, 2017, Plaintiff utilized Alaska's website to purchase roundtrip air carriage between San Diego and Boston.

34.   As part of the ticket buying process, Plaintiff was again directed to Alaska's webpage titled "Checkout: Review and complete payment."

35.    Again, Alaska did not enable Plaintiff to complete her flight purchase until she affirmatively elected to purchase or decline travel insurance offered by AGA.

36.   Based on her belief that she was purchasing the travel insurance product without any undisclosed remuneration to Alaska, Plaintiff chose to purchase travel insurance and paid $21.00 by credit card charge for the AGA travel insurance product.

37.   A true and accurate copy of the Confirmation Letter Alaska emailed to Plaintiff is attached as **Exhibit B**, sets out the charge for air travel, and separately confirms "Trip protection by [AGA]," without specifying any charge.

38.   Plaintiff's subsequent credit card statement, a true and accurate copy of which is attached as **Exhibit C**, reflected a separate charge for her purchase of the AGA travel insurance product.

## CLASS ALLEGATIONS

39.   Plaintiff brings this action as a class action under Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3), *Federal Rules of Civil Procedure*.

40.   Plaintiff asserts her claims for breach of fiduciary duty on behalf of the following class ("the National Class"):

> All persons and entities who, since 2015, purchased travel insurance products from AGA through Alaska.

41.   Plaintiff asserts her claims for violation of the UCL on behalf of the following subclass "(California Subclass"):

> All persons and entities residing within California who, since 2015, purchased travel insurance products from AGA through Alaska.

42.   The National Class and the California Subclass are referred to collectively as the "Classes."

43.   Excluded from the Classes are Alaska; any affiliate, parent, or subsidiary of Alaska; any entity in which Alaska has a controlling interest; any officer, director, or employee of Alaska; any successor or assign of Alaska; any Judge to whom this case is assigned as well as his or her immediate family and staff.

44.   Plaintiff reserves the right to amend or modify the Class definitions in connection with a motion for class certification or with the result of discovery.

### Numerosity

45.   Plaintiff does not know the exact size or identities of the proposed Classes. However, Plaintiff reasonably believes the Classes encompass tens of

9

thousands of individuals dispersed geographically throughout the United States and California, respectively. Therefore, the proposed Classes are so numerous that joinder of all members is impracticable. Membership in the Classes is ascertainable by virtue of the records of Alaska and AGA. Members of the Classes can be notified of the pendency of this action by mail and/or electronic mail, supplemented if deemed necessary or appropriate by the Court by published notice.

### Predominance of Common Issues

46.    There are questions of law and fact that are common to the Classes, which predominate over any questions affecting only individual members of the Classes. The common questions include, but are not limited to, the following:

    a.  whether Alaska receives a kickback, commission, payment or other remuneration in connection with AGA's sale of travel insurance products to Alaska's passengers;

    b.  whether Alaska's receipt of the payment constitutes a breach of a fiduciary duty of loyalty as the passenger's agent in connection with the purchase of travel insurance products from third-parties;

    c.  whether Alaska's receipt of the payment constitutes a breach of a fiduciary duty not to acquire material benefit as the passenger's agent in connection with the purchase of travel insurance products from third-parties;

    d.  whether Alaska's receipt of the undisclosed payment constitutes a breach of a fiduciary duty of accounting as the passenger's agent in connection with the purchase of travel insurance products from third-parties;

    e.  whether Alaska's receipt of the payment violates the "fraudulent" prong of the UCL;

    f.  whether Alaska's receipt of the payment violates the "unfair" prong of the UCL;

g. the nature and scope of the remedy available to Plaintiff and other similarly situated travel insurance product purchasers, including but not limited to restitution or injunctive relief.

*See, e.g., Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122 (9th Cir. 2017) (whether defendants assumed a fiduciary duty to plaintiffs, and whether defendants breached the fiduciary duty presented predominant common questions, warranting class certification).

## Typicality

47.     Plaintiff's claims are typical of the claims of the Classes and do not conflict with the interests of any other members of the Classes. Plaintiff and the Classes members were subjected to the same challenged course of conduct and suffered the same economic harm resulting from the undisclosed travel insurance sales commissions received by Alaska.

## Adequate Representation

48.     Plaintiff will fairly and adequately represent the interests of the Classes. Plaintiff is committed to the vigorous prosecution of the Classes' claims and has retained attorneys who are qualified to pursue this litigation and are experienced in class action litigation. Neither Plaintiff nor her counsel have interests conflicting with those of the other Classes members.

## Superiority

49.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual Classes member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Alaska's conduct. Further, it would be virtually impossible for the Classes members to individually and effectively redress the wrongs done to them. Use of the class action device in this instance presents far fewer management difficulties than alternative methods of

adjudication, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### Rule 23(b)(1)(B)

50.     Class certification is also warranted under Rule 23(b)(1)(B). Rule 23(b)(1)(B) allows for class actions if separate actions would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999) (Rule 23(b)(1)(B) certification is warranted in the case of a fund with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution). The material benefit garnered by Alaska as the "passengers' agent" constitutes such a "limited fund," which should be equitably allocated across the Class.

### Rule 23(b)(2)

51.     Class certification is also warranted under Rule 23(b)(2). A class may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (the requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole").

52.     Certification under Rule 23(b)(2) is appropriate here because all of the Class members have by definition been exposed to the solicitation of travel insurance sales by Alaska. Moreover, the declaratory and injunctive relief sought by Plaintiff are by definition generally applicable across the Classes as a whole.

### NO ADA PREEMPTION

53.   Because the claims alleged by Plaintiff do not relate to any "price, route or service" provided by Alaska as an air transportation common carrier, they are not preempted under the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713.

54.   In particular, Plaintiff's claims are premised solely on Alaska's conduct in connection with the offer and sale of the travel insurance products, and not with respect to "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *National Federation of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 726 (9th Cir. 2016) (ADA preemption inapplicable where the services rendered by the defendant airline were not services in the "public utility sense") (quoting *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir.1998) (en banc)). Indeed, as noted above, to the extent Alaska in the ticket contract assumed an agency relationship with its passengers with respect to arrangements for travel insurance services, it specifically did so in the context of "services other than Carriage by air," thus self-distinguishing services within the scope of the ADA.

55.   Moreover, to the extent Alaska's rendition of travel insurance services is implicated by its agreement to serve as the "Passenger's agent" in arranging the acquisition of travel insurance products, that agreement was voluntarily undertaken and is accordingly enforceable through private action under state law. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017) ("The States may not impose their own rules regarding fares, routes, or services, but may afford relief for breaches of obligations the airlines voluntarily undertook themselves, even when the obligations directly relate to fares, routes, and services.").

### THE STATE FILED RATE DOCTRINE DOES NOT APPLY

56.   Under the state filed-rate doctrine, rates duly adopted by a regulatory agency are not subject to collateral attack in court. Even assuming that this doctrine

exists with respect to state regulator-approved rates, it does not bar actions—as here—where "the underlying conduct challenged was not the charging of an approved rate." *Friedman v. AARP*, 283 F. Supp. 3d 873, 878-79 (C.D. Cal. 2018) (state filed-rate doctrine did not bar the plaintiff's challenges to AARP marketing of health insurance policies); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1082-83 (N.D. Cal. 2012)(the California insurance code protected defendant only in "situations where a plaintiff challenged a charged rate as excessive *per se*, and effectively asked the Court to calculate an alternative it deemed more 'fair'") (quotation omitted). This action is in essence about Alaska's false or misleading advertising of third party travel insurance, and not challenges to the reasonableness of the actual rates that were approved by any insurance regulator, including the California Department of Insurance ("DOI"). Adjudication of Plaintiffs' claims would not improperly encroach on such rate-making authority.

### THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY

57.    The doctrine of primary jurisdiction doctrine operates when enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. The claims alleged in this action are, however, within the conventional competence of the courts, and therefore do not require the specialized ratemaking expertise of any insurance regulator, including the DOI. *Friedman v. AARP*, 283 F. Supp. 3d 873, 878-79 (C.D. Cal. 2018) (primary jurisdiction doctrine did not bar the plaintiff's challenges to AARP marketing of health insurance policies).

### COUNT I
### BREACH OF FIDUCIARY DUTY
### (on behalf of Plaintiff and the National Class)

58.    Plaintiff repeats and re-alleges paragraphs 1–57 above as if set forth herein in full.

14

59.     Alaska agreed to serve as "Passenger's Agent" in connection with its rendition of services other than Carriage by air, including making arrangements for the purchase of travel insurance products by Alaska passengers like Plaintiff from AGA. Alaska's voluntarily assumption of limited agency on behalf of its passengers in this context conferred upon Alaska fiduciary duties owed to Plaintiff and the other members of the National Class, including the duty of loyalty, the duty of full disclosure, the duty not to acquire a material benefit, and the duty to account.

60.     Upon information and belief, Alaska received remuneration from AGA in connection with both of Plaintiff's purchases of the AGA travel insurance products.

61.     Alaska breached its fiduciary duties owed to Plaintiff and the other members of the National Class when it received the undisclosed payments on the purchase of AGA travel insurance products through Alaska's website.

62.     Plaintiff and the other members of the National Class were damaged by Alaska's breach of the foregoing fiduciary duties owed to them, including by (a) Alaska's retention of undisclosed profits resulting from its agency relationship, and/or (b) paying more for AGA travel insurance products than they otherwise should have.

63.     As a result of its' breach of fiduciary duties, Alaska should be compelled (a) to account for all undisclosed remuneration, and (b) to make restitution or otherwise disgorge into a common fund for the benefit of Plaintiff and the other members of the National Class all such remuneration received by Alaska in connection with the sale of the travel insurance services and products.

## COUNT II
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Business & Professions Code §§ 17200 *et seq*.
### (on Behalf of Plaintiff and the California Subclass)

64.     Plaintiff repeats and re-alleges paragraphs 1–57 above as if set forth herein in full.

65.     This claim is brought by Plaintiff and the California Subclass to obtain restitutionary and injunctive relief from Alaska for acts and practices, as alleged herein, that violated § 17200 of the California Business and Professions Code, commonly known as the UCL.

66.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice. *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051-52 (2017) ("Because the statute is written in the disjunctive, it is violated if a defendant violates any of the unlawful, unfair or fraudulent prongs."); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 172, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) ("A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair … business practices.").

67.     Had Alaska not misrepresented the travel insurance products as pass-through charges, Plaintiff would not have purchased the products through Alaska.

68.     But for Alaska's acts, Plaintiff would have paid less for the AGA travel insurance coverage.

69.     Plaintiff was thus exposed to misleading information about the travel insurance products she purchased, which caused the products to be sold at a higher price, and she would not have purchased them absent Alaska's misrepresentation.

70.     The acts and practices of Alaska alleged above have caused Plaintiff and the other members of the California Subclass to lose money or property by being secretly charged by AGA in order to fund the undisclosed remuneration to Alaska. Alaska's acts and practices are actionable under the "fraudulent" and "unfair" prongs of the UCL, as alleged with more specificity below.

71.     Alaska has been unjustly enriched as a result of its wrongful acts of unfair competition. Plaintiff and the other members of the California Subclass are accordingly entitled to injunctive relief prohibiting Alaska from continuing such practices. Plaintiff and the other members of the California Subclass are also

entitled to further equitable relief, including accounting, restitution and/or disgorgement of all revenues and profits that may have been obtained by Alaska as a result of such business acts and practices, pursuant to California Business and Professions Code §§ 17203 and 17204.

72.     Plaintiff flies Alaska frequently, and is a member of its "Mileage Plan" frequent flier program. Plaintiff, as a previously harmed Alaska passenger, maintains a desire to purchase travel insurance products through Alaska if priced without the concealed kickback to Alaska, but can longer no longer rely upon the validity of the information provided by Alaska, thus affording her standing to pursue prospective injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018).

### Fraudulent Prong

73.     By omitting the disclose its remuneration from AGA and otherwise giving Alaska passengers the false impression that it was functioning as an unpaid conduit for the purchase of travel insurance products from third-party AGA, Alaska deceptively lead Plaintiffs and the other members of the California Subclass to reasonably believe that they were being charged for the travel insurance product on a pass-through basis.

74.     As a consequence of Alaska's failure to disclose the marked-up cost of the AGA travel insurance product to fund Alaska's remuneration, Plaintiff and other members of the California Subclass unwittingly paid more for the AGA travel insurance coverage than they otherwise would.

75.     Alaska's conduct is deceptive within the meaning of the UCL's fraudulent prong, for "members of the public are likely to be deceived by the practice." *See, e.g., Friedman v. AARP, Inc.*, 855 F.3d 1047, 1056 (9th Cir. 2017) (defendant misleadingly omitted to disclose that health insurance premium included an imbedded commission to the defendant); *see also, e.g., Coleman v. CubeSmart*, No. 16-25009-CIV, 2018 WL 3672241, at *8 (S.D. Fla. June 21, 2018)

(sustaining on motion to dismiss claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") that defendant created false impression of a pass-through charge); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) ("We therefore conclude that where the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FDUTPA.").

76.   Reliance on Alaska's omission with respect to the mark-up on the insurance product to fund the payment to Alaska is reasonably inferred because the substantial undisclosed payment to Alaska is a material fact: a "reasonable man would attach importance to [its] existence or nonexistence in determining his choice of action in the transaction in question." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327, 207 P.3d 20, 39 (2009)*; see also id.* (whether a misrepresentation is sufficiently material to allow for an inference of reliance "is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it").

### Unfair Prong

77.   Alaska engaged in "unfair" business acts or practices by, among other things, failing to disclose to its financial interest in the sale of travel insurance products by AGA, while representing those products as presented, offered, sold, and serviced by AGA. *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1056 (9th Cir. 2017) (it is not, as a matter of law, an "obviously unimportant" consideration for a reasonable purchaser of insurance to know that an undisclosed fee would be collected in addition to -- rather than from -- the actual cost of the insurance)

78.   Alaska further engaged in unfair business acts or practices by holding itself out to be an agent of passengers who elected to purchase AGA travel insurance policies, while at the same time receiving undisclosed payments from

AGA on each travel insurance product sold to Plaintiff and the other members of the California Subclass.

79.   In the course of conducting business, Alaska has thus committed "unfair" business acts or practices, by which it has been unjustly enriched. Because the utility of Alaska's conduct (zero) is outweighed by the gravity of harm to Plaintiff, other members of the California Subclass, and the competitive market, Alaska's conduct is "unfair" having offended an established public policy. Further, Alaska engaged in immoral, unethical, oppressive, and unscrupulous activities that are reasonably avoidable and substantially injurious to the public at large. There were reasonably available alternatives to further Alaska's legitimate business interests other than the conduct described herein.

80.   Plaintiff and the other members of the California Subclass were economically harmed by Alaska's alleged violations of the "unfair" prong of the UCL through their payment of money to acquire the travel insurance products for which Alaska was secretly remunerated. On behalf of herself and all other members of the California Subclass, Plaintiff accordingly seeks relief seeks restitution of the remuneration Alaska received as a consequence of Alaska's violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.   Certification of this case as a class action on behalf of the National Class and the California Subclass, and certification of Plaintiff as an adequate Class Representative and her counsel as Class Counsel for both the National Class and the California Subclass;

B.   Issuance of a Court order finding Alaska in breach of its fiduciary duties owed to Plaintiff and the other members of the National Class;

C.   Issuance of a Court order finding Alaska in violation of the UCL as to Plaintiff and the other members of the California Subclass;

D.      Issuance of a Court order awarding appropriate equitable relief to Plaintiff and the other members of the Classes, including injunctive relief precluding Alaska from receiving undisclosed remuneration and restitution and disgorgement of Alaska's past remuneration stemming from the sale of travel insurance products;

E.      An award of costs and reasonable attorneys' fees; and

F.      Such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable as permitted under applicable law.

Dated: June 7, 2019.

**BONNETT FAIRBOURN FRIEDMAN & BALINT, PC**

s/ Manfred P. Muecke
Manfred P. Muecke (SBN: 222893)
mmuecke@bffb.com
Patricia Syverson (SBN: 203111)
psyverson@bffb.com
Bonnett Fairbourn Friedman & Balint PC
600 West Broadway, #900
San Diego, CA 92101
Telephone: (619) 798-4292
Fax: (602) 274-1199

Andrew S. Friedman (*Pro Hac Vice* pending)
afriedman@bffb.com
Francis J. Balint, Jr. (*Pro Hac Vice* pending)
fbalint@bffb.com
Bonnett Fairbourn Friedman & Balint PC
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199

Adam M. Moskowitz (*Pro Hac Vice* pending)
adam@moskowitz-law.com
Howard M. Bushman (*Pro Hac Vice* pending)
howard@moskowitz-law.com
Joseph M. Kaye (*Pro Hac Vice* pending)
joseph@moskowitz-law.com
THE MOSKOWITZ LAW FIRM, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

*Attorneys for Plaintiff*