1  Gayle I. Jenkins (SBN: 168962)
   gjenkins@winston.com
2  Megan L. Whipp (SBN: 319182)
   mwhipp@winston.com
3  **WINSTON & STRAWN LLP**
   333 S. Grand Avenue
4  Los Angeles, CA 90071-1543
   Telephone:  (213) 615-1700
5  Facsimile:   (213) 615-1750

6  Lazaro Fernandez, Jr. (*pro hac vice*)
   lfernandez@stackfernandez.com
7  **STACK FERNANDEZ & HARRIS, P.A.**
   1001 Brickell Bay Drive, Suite 2650
8  Miami, Florida 33131
   Telephone:  (305) 371-0001
9
   Attorneys for Defendant
10 ALASKA AIRLINES, INC.

11

12              **UNITED STATES DISTRICT COURT**

13            **SOUTHERN DISTRICT OF CALIFORNIA**

14 ANDREA DURKEE, individually        | **Case No. 19-CV-01071 AJB JLB**
   and on behalf of herself and all others
15 similarly situated,                 | Hon. Anthony J. Battaglia
                                       | Courtroom 4A
16              Plaintiff,
                                       | **DEFENDANT ALASKA AIRLINES,**
17      vs.                            | **INC.'S NOTICE OF MOTION AND**
                                       | **MOTION TO DISMISS PLAINTIFF'S**
18 ALASKA AIRLINES, INC.,              | **COMPLAINT**

19              Defendant.
                                       | Date:   November 7, 2019
20                                     | Time:  2:00 p.m.
                                       | Courtroom:  4A
21
                                       | Complaint filed:  June 7, 2019
22                                     | Trial Date:  None

23

24

25

26

27

28

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 7, 2019 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 4A of this Court, located at 221 West Broadway, San Diego, CA 92101, defendant Alaska Airlines, Inc. ("Alaska"), will and hereby does move this Court for an order dismissing the Complaint (Dkt. No. 1) of plaintiff Andrea Durkee ("Plaintiff").

Alaska moves on the grounds that, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 9(b), Plaintiff lacks standing and fails to state a claim upon which relief can be granted, and this Court should not exercise jurisdiction over non-California putative class members. This Motion is based on this Notice of Motion and Motion, and the attached Memorandum of Points and Authorities in support of the Motion filed concurrently herewith, the record in this action, and any evidence and argument that may be presented at or before the hearing.

Dated: August 9, 2019    WINSTON & STRAWN LLP

By:  *s/ Gayle I. Jenkins*
   Gayle I. Jenkins
   Attorneys for Defendant
   ALASKA AIRLINES, INC.

# TABLE OF CONTENT

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   STATEMENT OF ALLEGED FACTS ............................................ 2

III.  LEGAL STANDARD ....................................................................... 3

IV.   ARGUMENT.................................................................................... 3

    A.   The ADA Preempts Plaintiff's Claims .................................... 3

        1.   The ADA Preemption Clause is Applied Expansively................... 4

        2.   Plaintiff's State Law Claims Are Preempted Because They Amount to Impermissible Regulation of an Airline Service ........... 4

    B.   Plaintiff's Breach of Fiduciary Duty Must Be Dismissed ........................ 8

        1.   Alaska's Contract of Carriage Did Not Create an Agency Relationship for Purposes of Procuring Insurance ........................ 8

        2.   Plaintiff Has Not Properly Pled and Cannot Show that an Agency Relationship Existed............................................................. 9

    C.   Plaintiff's UCL Claim Must Be Dismissed ............................ 11

        1.   Plaintiff Does Not Have Standing to Bring a UCL Claim ............ 11

            a.   Plaintiff Has Not and Cannot Allege an Injury in Fact....... 12

            b.   Plaintiff Has Not and Cannot Allege Actual Reliance or Causation........................................................................ 13

        2.   Plaintiff Fails to State a Claim Under the UCL............................ 15

            a.   Alaska's Alleged Representations and Omissions Were Not Fraudulent or Deceptive as a Matter of Law ...... 16

            b.   Plaintiff Fails to Allege an Actionable Omission............... 18

            c.   Plaintiff Fails to Allege Any "Unfair" Business Practices........................................................................... 19

            d.   Plaintiff Has No Standing to Seek Injunctive Relief.......... 21

            e.   The Complaint Does Not Allege Fraud with the Particularity Required by Fed. R. Civ. P. 9(b) ................... 22

    D.   The Nationwide Class Allegations Should Be Dismissed ....................... 23

        1.   Material Variations in State Laws Make Nationwide Class Treatment Unmanageable............................................................. 23

i

1

2.     Non-Resident Absentee Class Members' Claims Should Be Dismissed for Lack of Standing and Personal Jurisdiction ........... 24

V.     CONCLUSION .................................................................................. 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC Charters, Inc. v. Bronson*,
   591 F. Supp. 2d 1272 (S.D. Fla. 2008) ..................................................................... 7

*Allen v. Hyland's Inc.*,
   2019 WL 2142843 (9th Cir. 2019) ........................................................................ 19

*Alvarez v. Felker Mfg. Co.*,
   230 Cal. App. 2d 987 (1964) ............................................................................ 9, 11

*In re Am. Airlines Privacy Litig.*,
   370 F. Supp. 2d 552 (N.D. Tex. 2005) .................................................................. 6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 25

*American Airlines v. Wolens*,
   513 U.S. 227 (1995) ......................................................................................... 6, 7

*Anderson v. Badger*,
   84 Cal. App. 2d 736 (1948) ............................................................................. 9, 11

*Banga v. Gundumolgula*,
   2013 WL 3804046 (E.D. Cal. July 19, 2013,
   *report and recommendation adopted*, 2013 WL 11332786 (E.D. Cal.
   Sept. 12, 2013) ..................................................................................................... 7

*Banks v. Nissan N. Am., Inc.*,
   2012 WL 8969415 (N.D. Cal. Mar. 20, 2012) ...................................................... 23

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 3

*Bower v. AT&T Mobility, LLC*,
   196 Cal. App. 4th 1545 (2011) ............................................................................ 13

*Bristol-Myers Squibb v. Super. Ct. of Cal.*,
   137 S. Ct. 1773 (2017) ......................................................................................... 25

*Buller v. Sutter Health*,
  160 Cal. App. 4th 981 (2008) .......................................................................... 19, 21

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................... 24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................................ 20

*Cover v. Windsor Surry Co.*,
  2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ......................................................... 23

*Cox v. Spirit Airlines*,
  2018 WL 6168086 (E.D.N.Y. Nov. 20. 2018) ......................................................... 5

*David v. United Cont'l Holdings, Inc.*,
  2015 WL 7573204 (D.N.J. Nov. 24, 2015) .............................................................. 5

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ............................................................................... 21

*Davison v. Kia Motors Am., Inc.*,
  2015 WL 3970502 (C.D. Cal. June 29, 2015) ....................................................... 24

*Doll v. Chicago Title Ins. Co.*,
  246 F.R.D. 683 (D. Kan. 2007) ............................................................................ 23

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ............................................................................ 15

*Easter v. Am. W. Fin.*,
  381 F.3d 948 (9th Cir. 2004) ............................................................................... 24

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ............................................................................... 16

*Edwards v. Freeman*,
  34 Cal. 2d 589 (1949) ......................................................................................... 10

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................... 15, 19, 20, 21

*Fabozzi v. Stubhub, Inc.*,
  2012 WL 506330 (N.D. Cal. Feb. 15, 2012) .............................................. 17, 18, 19

iv

*Fernandez v. Atkins Nutritionals, Inc.*,
  2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ..............................................22

*Figy v. Amy's Kitchen, Inc.*,
  2013 WL 6169503 (N.D. Cal. 2013) .....................................................14

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................25

*Flaster/Greenberg P.C. v. Brendan Airways, LLC*,
  2009 WL 1652156 (D.N.J. June 10, 2009) ...............................................7

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ....................................................24

*Friedman v. AARP, Inc.*,
  855 F.3d 1047 (9th Cir. 2017) ............................................................18

*Friedman v. AARP Servs., Inc.*,
  283 F. Supp. 3d 873 (C.D. Cal. 2018) ..................................................13

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) .............................................................22

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................21

*Hall v. Time Inc.*,
  158 Cal. App. 4th 847 (2008) ............................................................13

*Hangarter v. Provident Life and Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) .............................................................22

*People ex rel. Harris v. Delta Air Lines, Inc.*,
  247 Cal. App. 4th 884 (2016) ..............................................................7

*Hickcox-Huffman v. US Airways, Inc.*,
  855 F.3d 1057 (9th Cir. 2017) .............................................................6

*Hodges v. Apple Inc.*,
  2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) .........................................21

*Hodson v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) .........................................................18, 20

v

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013)...................................................................15

*In re Jetblue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005).....................................................................7

*Kauai Scuba Ctr. v. PADI Americas Inc.*,
  524 F. App'x 344 (9th Cir. 2013).........................................................................13

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)...............................................................................22

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003).........................................................................................21

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011)...........................................................................................12

*Lavie v. Proctor & Gamble Co.*,
  105 Cal. App. 4th 496 (2003)................................................................................16

*Leadsinger, Inc. v. BMG Music Publ'g*,
  429 F. Supp. 2d 1190 (C.D. Cal. 2005)...................................................................3

*Letizia v. Facebook, Inc.*,
  267 F. Supp. 3d 1235 (N.D. Cal. 2017)............................................................14, 22

*Marshall v. H & R Block Tax Servs. Inc.*,
  270 F.R.D. 400 (S.D. Ill. 2010).............................................................................23

*Maslenjak v. U.S.*,
  137 S. Ct. 1918 (2017).............................................................................................8

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012)............................................................................23, 24

*McAdam v. State Nat'l Ins. Co., Inc.*,
  2012 WL 4364655 (S.D. Cal. Sep. 24, 2012)........................................................21

*McCann v. Lucky Money, Inc.*,
  129 Cal. App. 4th 1382 (2005)..............................................................................17

*McGarry v. Delta Air Lines, Inc.*,
  2019 WL 1885613 (C.D. Cal. Apr. 16, 2019)..........................................................6

*MH Pillars Ltd. v. Realini*,
  2017 WL 916414 (N.D. Cal. Mar. 8, 2017) ............................................................ 11

*Miller v. Delta Air Lines, Inc.*,
  2012 WL 1155138 (S.D. Fla. Apr. 5, 2012) ............................................................. 6

*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988), *overruled on other grounds by*
  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 3

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ............................................................................................... 4, 5

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) .................................................................................... 3

*Mussat v. IQVIA Inc.*,
  2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) .......................................................... 25

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
  813 F.3d 718 (9th Cir. 2016) .................................................................................... 6

*Northwest, Inc. v. Ginsberg*,
  572 U.S. 273 (2014) ............................................................................................... 4, 7

*Papasan v. Dometic Corp.*,
  2017 WL 4865602 (N.D. Cal. Oct. 27, 2017) ........................................................ 13

*Peterson v. Cellco Partnership*,
  164 Cal. App. 4th 1583 (2008) .......................................................................... 12, 13

*Philips v. Ford Motor Co.*,
  2015 WL 4111448 (N.D. Cal. July 17, 2015) ........................................................ 14

*Pica v. Delta Air Lines, Inc.*,
  2019 WL 1598761 (C.D. Cal. Feb. 14, 2019) .......................................................... 6

*Qwest Commc'n v. Herakles, LLC*,
  2008 WL 3864620 (E.D. Cal. Aug. 19, 2008) ..................................................... 9, 10

*Rahman v. Mott's LLP*,
  2018 WL 4585024 (N.D. Cal. Sep. 25, 2018) ........................................................ 22

*Red v. Kraft Foods, Inc.*,
   2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) .......................................................17

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016)...............................................................15

*Rowe v. N.H. Motor Transp. Ass'n*,
   552 U.S. 364 (2008)............................................................................................4, 5, 6

*Rubenstein v. The Gap, Inc.*,
   14 Cal. App. 5th 870 (2017) ...................................................................................16

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
   2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) .......................................................25

*Spence v. Glock, Ges.m.b.H.*,
   227 F.3d 308 (5th Cir. 2000) ..................................................................................24

*Stout v. Med-Trans Corp.*,
   313 F. Supp. 3d 1289 (N.D. Fla. 2018) ...................................................................6

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011)............................................................................16

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ............................................................................................14

*Trenz v. Sirius Xm Radio, Inc.*,
   2015 WL 11658715 (S.D. Cal. July 13, 2015)........................................................11

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................3, 22

*Violette v. Shoup*,
   16 Cal. App. 4th 611 (1993) .............................................................................10, 11

*Warner v. Tinder Inc.*,
   105 F. Supp. 3d 1083 (C.D. Cal. 2015)............................................................13, 16

*Wenokur v. AXA Equitable Life Ins. Co.*,
   2017 WL 4357916 (D. Ariz. Oct. 2, 2017) .............................................................25

*Williamson v. Apple, Inc.*,
   2012 WL 3835104 (N.D. Cal. Sept. 4, 2012).........................................................17

*Williamson v. Reinault-Thomas Corp.*,
   2012 WL 1438812 (N.D. Cal. Apr. 25, 2012)......................................................15, 17

*World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*,
   66 F. Supp. 3d 1233 (N.D. Cal. 2014).....................................................................11

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ...............................................................................24

**Statutes**

28 U.S.C. § 2072(b) .....................................................................................................25

49 U.S.C. § 41713(b)(1) ...............................................................................................4

Cal. Bus. & Prof. § 17200 .......................................................................................1, 12

Cal. Bus. & Prof. § 17204...................................................................................12, 14

**Other Authorities**

76 Fed. Reg. 23110-01 (Apr. 25, 2011)........................................................................4

Airline Deregulation Act of 1978, 49 U.S.C. § 1371 et seq.........................................1

Fed. R. Civ. P. 9(b) ..........................................................................................1, 22, 23

Fed. R. Civ. P. 12(b)(6) ................................................................................................3

Fed. R. Civ. P. 23 ........................................................................................................25

1   **I.     INTRODUCTION**

2         This case stems from Plaintiff's admittedly voluntary decision to purchase travel

3   insurance from a third party, Allianz Global Assistance ("AGA"), in connection with

4   several trips she was concurrently booking on Alaska's website. Plaintiff's claims are

5   premised on her feigned surprise at the unremarkable proposition that Alaska is being

6   compensated by AGA for allowing AGA occupy a valuable spot in Alaska's booking

7   path to present travel insurance offers to Alaska's customers. The Complaint purports

8   to allege two claims: breach of fiduciary duty (Count I) and violation of California's

9   Unfair Competition Law, Bus. & Prof. §§ 17200, et seq. ("UCL") (Count II). The claims

10  are fatally flawed for the following independently sufficient reasons:

11        First, both claims are entirely preempted by the expansive express preemption

12  provision in the Airline Deregulation Act of 1978 ("ADA"), which preempts state law

13  claims, like those alleged here, that "relate to" a "service of an air carrier."

14        Second, Plaintiff cannot allege the fundamental elements for her breach of

15  fiduciary duty claim because she alleges no cognizable basis for a fiduciary relationship

16  between herself and Alaska and no damages.

17        Third, Plaintiff lacks standing to assert a UCL claim because she has not and

18  cannot allege an actual injury in fact, actual reliance on the alleged wrongful conduct

19  by Alaska, or that any alleged representation or omission by Alaska caused her any

20  harm. Moreover, Plaintiff cannot allege the fundamental elements of a UCL claim

21  because she cannot identify any Alaska website statement that is false, and cannot

22  identify any duty to disclose that gives rise to a deceptive omission. Plaintiff also lacks

23  standing to seek injunctive relief under the UCL because she has not and cannot allege

24  a "certainly impending" "threat of future harm" because she can purchase travel

25  insurance elsewhere. Plaintiff's UCL claim also fails because the Complaint fails to

26  plead fraud with the particularity required by Fed. R. Civ. P. 9(b).

27        Fourth, Plaintiff's nationwide class allegations in connection with her breach of

28  fiduciary duty claim must be dismissed because application of varied state laws render

nationwide class treatment of the breach of fiduciary duty claim unmanageable and inappropriate. Moreover, Plaintiff lacks standing to assert claims under the laws of the states in which she does not reside. In addition, this Court should not exercise specific personal jurisdiction over nonresident Alaska where the proposed nationwide class members' claims bear no connection to California.

## II.   STATEMENT OF ALLEGED FACTS

Customers may purchase travel on an Alaska flight on www.alaskaair.com. *See* Compl. ¶¶ 4, 28. During the online booking process, customers are presented with an option to purchase a travel insurance policy before they can proceed with the purchase of their airline tickets. *Id*. ¶ 4. The travel insurance policies marketed on Alaska's website are offered and sold by AGA, a "third-party provider." *Id*. ¶ 3. If a customer elects to purchase travel insurance in response to AGA's offer in Alaska's booking path, the cost of the policy is itemized separately from the airfare purchase and is charged separately by AGA. *Id*. ¶¶ 5, 32, 37, 38; Exs. A and C.

On June 7, 2019, Plaintiff filed this Complaint alleging that Alaska's marketing of travel insurance policies on its website is deceptive because Alaska allegedly fails to disclose that "the purchase price of the travel insurance product includes a payment to Alaska." *Id*. ¶ 7. Plaintiff also alleges that Alaska assumed—and breached—fiduciary duties to its customers regarding the purchase of travel insurance because Alaska's Contract for Carriage provides:

> "If Alaska makes arrangements for a Passenger with any third party to provide any services other than Carriage by air, or issues a Ticket or voucher relating to transportation or services (other than Carriage by air) provided by a third party such as hotel reservations or car rental, Alaska acts only as Passenger's agent in doing so."

*Id.* ¶ 18 (emphasis removed).

Plaintiff alleges that she purchased a travel insurance policy from AGA while also booking travel on Alaska's website on July 13, 2017 and November 10, 2017. *Id.* ¶¶ 28, 33. She alleges that she would like to "purchase travel insurance products through Alaska if priced without the concealed kickback to Alaska…." *Id.* ¶ 72. What Plaintiff

2

1    does *not* allege, however, is that she saw—let alone relied on—the Contract of Carriage
2    or the specific statements and materials referenced in the Complaint. Nor does she
3    allege that she could have purchased the same or similar travel insurance policies for
4    less or that she did not get what she paid for.

5         Plaintiff seeks to represent a nationwide class for the breach of fiduciary duty
6    claim and a California class for violations of the UCL, and seeks restitution,
7    disgorgement and injunctive relief.

8    **III.   LEGAL STANDARD**

9         Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to
10   state a claim upon which relief can be granted." To survive a motion to dismiss,
11   "[f]actual allegations must be enough to raise a right to relief above the speculative
12   level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Stripped of conclusory or
13   implausible allegations, the remaining "non-conclusory 'factual content,' and
14   reasonable inferences from that content, must be plausibly suggestive of a claim
15   entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.
16   2009). Additionally, Plaintiff must allege "the who, what, when, where, and how" of
17   the alleged fraudulent conduct, with enough "specific[ity]…to give defendants notice
18   of the particular misconduct" alleged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,
19   1106 (9th Cir. 2003). Plaintiff's claims do not satisfy these standards.

20        Although leave to amend may be granted, such leave is not required where "any
21   amendment would be futile." *Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d
22   1190, 1197 (C.D. Cal. 2005); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.
23   1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (futility
24   means that "no set of facts can be proved under the amendment to the pleadings that
25   would constitute a valid and sufficient claim or defense").

26   **IV.   ARGUMENT**

27        **A.    The ADA Preempts Plaintiff's Claims**

28

---

### 1.    The ADA Preemption Clause is Applied Expansively

Congress enacted the ADA in 1978 to spur competitive market forces by largely deregulating the airline industry. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014). Concerned that states might promulgate their own laws to govern airline regulations, Congress included a broad preemption clause as part of the ADA. *Id.* at 1429; *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (same). The ADA preemption clause provides that "a State, political subdivision of a state, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). The U.S. Supreme Court has determined that the language of the ADA preemption clause expresses "a broad pre-emptive purpose" and that "State enforcement actions having a connection with, or reference to, airline 'rates, routes, or services' are pre-empted under [the ADA]." *Morales*, 504 U.S. at 383, 384. The ADA's preemptive effect is so broad as to encompass even those state laws that only indirectly impact air carrier prices, routes or services. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008); *Northwest*, 134 S. Ct. at 1429-31 (the ADA preempts state laws, regulatory claims, and common law claims).

### 2.    Plaintiff's State Law Claims Are Preempted Because They Amount to Impermissible Regulation of an Airline Service

Plaintiff's UCL and fiduciary duty claims arise from Alaska's website featuring an offer of optional travel insurance during the ticket purchasing process, and thus run afoul of the ADA. Undisputedly, Plaintiff has alleged this offer relates to Alaska's services by asserting that Alaska fails to disclose that "the purchase price of the travel insurance product includes a payment to Alaska," while it acts as an agent for the travel insurance policies sold through its website. Compl. ¶¶ 7, 18.

Indeed, the Department of Transportation has made it clear that the availability of travel insurance is an ancillary service of airlines. 76 Fed. Reg. 23110-01, at 23144 (Apr. 25, 2011) (characterizing travel insurance as an "optional service" made available

by an airline). The ADA's reach extends to such ancillary services, with the Court explaining that "the key phrase, obviously, is 'relating to'" which is defined "broad[ly]" to mean "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales*, 504 U.S. at 383. The option to purchase travel protection plans—which include reimbursement for travel delay, missed connections, and lost baggage—obviously relates to, bears on and concerns Alaska's flights and travel services. *See, e.g.*, *Cox v. Spirit Airlines*, 2018 WL 6168086, at *5 (E.D.N.Y. Nov. 20. 2018) (finding plaintiff's unjust enrichment and fraud claims regarding carry-on baggage fees preempted by the ADA, noting that "[a]s dictated by the Supreme Court, state laws and provisions cannot be applied to require airlines to advertise, market, or make particular disclosures regarding fees...").

Here, Plaintiff's attempt to use state law claims to regulate Alaska's alleged conduct when providing a service is preempted under the ADA. In her allegations, Plaintiff seeks to regulate Alaska's disclosures regarding ancillary services on Alaska's website, including by seeking an injunction under the UCL "precluding Alaska from receiving undisclosed remuneration…from the sale of travel insurance products." Compl., Prayer for Relief, D. If California were to require different disclosures on Alaska's website than those required by other states, this would lead to the "patchwork of state service-determining laws, rules, and regulations" that the Supreme Court warned against in *Rowe*, creating a "state regulatory patchwork [that] is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." *Rowe*, 552 U.S. at 373. Thus, Plaintiff's claims upend Congress' goals precisely in the way that the Supreme Court has forbidden.

Several cases presenting analogous circumstances compel this conclusion, including those based on undisclosed financial arrangements or conditions. For example, in *David v. United Cont'l Holdings, Inc.*, 2015 WL 7573204, at *1 (D.N.J. Nov. 24, 2015), the court held that plaintiff's state-law claims challenging the airline's

failure to disclose to consumers that DirecTV and WiFi would work only over the continental U.S. were preempted under the ADA. *See also McGarry v. Delta Air Lines, Inc.*, 2019 WL 1885613, at *8 (C.D. Cal. Apr. 16, 2019) (finding "little difficulty in concluding that Plaintiff's claim for violation of various data breach acts is preempted by the ADA because those acts are similarly prescriptive and serve as a means to police services provided by Defendants."); *Pica v. Delta Air Lines, Inc.*, 2019 WL 1598761, at *9 (C.D. Cal. Feb. 14, 2019) (ADA preemption covers services by third-party provider of voice and chat services related to sales and support for Delta); *Stout v. Med-Trans Corp.*, 313 F. Supp. 3d 1289, 1293-98 (N.D. Fla. 2018) (ADA preempted state-law claims that challenged the billing practices for air ambulance services); *Miller v. Delta Air Lines, Inc.*, 2012 WL 1155138, at *1-3 (S.D. Fla. Apr. 5, 2012) (ADA preempted state-law claims including UCL-type claim in which customer challenged airline's failure to inform customers of their right to reimbursement for lost, damaged, or delayed baggage).[1]

Moreover, Plaintiff's allegations of purported deception stem from Plaintiff's interaction with Alaska's booking process on its website (Compl. ¶¶ 1, 4, 28, 33), and thus her claims further "have a connection . . . with [the airline's] ticketing service, including the reservation component." *In re Am. Airlines Privacy Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005). Consequently, Plaintiff's attempt "to regulate the representations and commitments" on Alaska's website "ma[de] in connection with reservations and ticket sales"—specifically how and what is communicated to potential customers about services on the website (*see e.g.*, Compl. ¶ 72)—"fits squarely within the range of state law actions that the Supreme Court concluded in *Wolens* and *Morales*,

---

[1] Plaintiff's reliance on *Nat'l Fed'n of the Blind v. United Airlines Inc.,* 813 F.3d 718, 726 (9th Cir. 2016) is misplaced because the court in that case held that airline ticket kiosks were an amenity for convenience, not a "service." Here, Plaintiff expressly alleges that travel insurance is a "service" offered by Alaska (*see e.g.*, Compl. ¶ 5) which renders it an "essential detail of the carriage itself." *Rowe*, 552 U.S. at 373. Plaintiff's reliance on *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1059 (9th Cir. 2017) is also misplaced because *Hickcox-Huffman* involved a breach of contract claim which is distinguishable from Plaintiff's breach of fiduciary duty claim.

are expressly preempted by the ADA." *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005) (claim alleging defendant "engaged in unfair or deceptive acts" under New York law preempted because it was "a direct effort to regulate the manner in which JetBlue communicates with its customers in connection with reservations and ticket sales, both of which are services provided by the airline to its customers"); *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 901 (2016) (ADA preemption precluded suit seeking to force airline to comply with privacy policy requirements that would interfere with the airline's selection and design of its mobile application).

For these reasons, Plaintiff's claims are precisely the type of claims that the ADA preempts because, on their face, the claims have a "connection with, or reference to, airline prices, routes, or services." *Ginsberg*, 134 S. Ct. at 1430 (internal quotation marks omitted). The claims—based on alleged deceptive marketing on Alaska's website—mirror the claims that the Supreme Court held the ADA preempts in *Wolens* because state-imposed prohibitions on "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact" constitute "intrusive regulation of airline business practices." *Wolens*, 513 U.S. at 227-28 (ADA preempts fraud claim that purported "to guide and police the marketing practices of airlines.").[2] Because Plaintiff's claims based on the travel insurance offer on Alaska's website undisputedly relate to a service that is ancillary and incidental to the travel being provided by Alaska, they are preempted.

---

[2] "Indeed, courts routinely hold that state consumer protection and deceptive practices[] laws and regulations are expressly preempted by [the ADA]." *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1301 (S.D. Fla. 2008); *see, e.g., Banga v. Gundumolgula*, 2013 WL 3804046, at *3 (E.D. Cal. July 19, 2013) ("[P]laintiff asserts claims based on the UCL, which has been preempted by the ADA."), *report and recommendation adopted*, 2013 WL 11332786 (E.D. Cal. Sept. 12, 2013); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, 2009 WL 1652156, at *6–7 (D.N.J. June 10, 2009) (explaining that the ADA leaves no "room for a consumer fraud claim against an airline" and dismissing such claim with prejudice).

**B.    Plaintiff's Breach of Fiduciary Duty Must Be Dismissed**

**1.    Alaska's Contract of Carriage Did Not Create an Agency Relationship for Purposes of Procuring Insurance**

Plaintiff's breach of fiduciary duty claim is premised on Plaintiff's faulty theory that, pursuant to Alaska's Contract for Carriage ("COC"), Alaska "voluntarily assum[ed a] limited agency on behalf of its passengers" in "making arrangements for the purchase of travel insurance products." Compl. ¶ 59. On its face, the COC, however, did not create such a relationship. The COC provides that:

> If Alaska *makes arrangements* for a Passenger with any third party to provide *any services other than Carriage by air,* or issues a Ticket or voucher relating to transportation or services (other than Carriage by air) provided by a third party *such as hotel reservations or car rental,* Alaska acts only as Passenger's agent in doing so. The terms and conditions of the third party service provider will apply.

COC, Rule 3(O) (quoted at Compl. ¶ 18) (emphasis added). Importantly, the COC does not mention or encompass insurance. Nonetheless, the Complaint asserts that the scope of the agency relationship was "limited to the context of procuring third party insurance products" on behalf of Alaska's passengers. Compl. ¶¶ 20-22. But, as the Complaint makes clear, Alaska never procured *anything* on behalf of Plaintiff, let alone travel insurance or even a voucher for travel insurance.

"Procure" means "[t]o obtain (something), esp. by special effort or means." *Maslenjak v. U.S.*, 137 S. Ct. 1918, 1924 (2017) (citation omitted). Yet, it was Plaintiff who "affirmatively elected" to buy her insurance product, not Alaska. Compl. ¶ 30; *see also id.* ¶ 36 ("Plaintiff chose to purchase [the travel insurance product]"). And, Plaintiff was the one who had to contact AGA "to update" her travel insurance coverage, not Alaska. *Id.*, Ex. B. Alaska only provided AGA space on Alaska's website through which Plaintiff could contract with AGA and arrange her travel insurance. *Id.* ¶ 4. Consequently, since Alaska never "made arrangements for" or "procured" Plaintiff's travel insurance, as it would arrange a hotel room or car rental for a stranded passenger, it did not "voluntarily assum[e a] limited agency." Plaintiff's distorted reading of the

8

COC does not alter this fact. *See Anderson v. Badger*, 84 Cal. App. 2d 736, 741 (1948) ("If the obligations assumed are [not that of an agent], that relationship is not changed to one of agency by his being designated in the contract as an agent.").[3]

### 2.    Plaintiff Has Not Properly Pled and Cannot Show that an Agency Relationship Existed

Under California law, the essential elements of an agency relationship are:

(1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him.

*Alvarez v. Felker Mfg. Co.*, 230 Cal. App. 2d 987, 999 (1964).

Plaintiff does not allege that Alaska had the power to alter the legal relations between Plaintiff and third persons or that Plaintiff had the right to control the conduct of Alaska, nor could she. Plaintiff simply assumes—based on her unsupported interpretation of the COC—that an agency relationship existed. *See* section IV.B.1, *supra*. Plaintiff is incorrect as a matter of law.

In *Qwest Commc'n v. Herakles, LLC*, 2008 WL 3864620, at *5 (E.D. Cal. Aug. 19, 2008), for example, the plaintiff asserted that pursuant to the parties' contractual relationship, the defendant "was authorized to stand in the place of [the plaintiff] while interacting with [the plaintiff's] current or potential customers." The plaintiff, however, failed to allege "that [the defendant] had the power to alter legal relations between third parties and [the plaintiff]." *Id.* The plaintiff sought "to avoid this requirement by noting that the law recognizes some agents, such as brokers and attorneys, who often do not

---

[3]   Indeed, Alaska's "Website terms of use," which appear on Alaska's website, were assented to by Plaintiff with her affirmative acknowledgement before she was able to complete her purchase of travel on the website, and supplement the COC, makes clear that Alaska was not acting as an agent in connection with Plaintiff's dealings with third-party vendor AGA.   The terms of use provide that the "[i]nclusion of [] links and displays [to websites not maintained by Alaska] in [Alaska's website] does not imply our endorsement, approval or agreement with the linked or displayed websites or their content. *We are not responsible for any losses, damages or other liabilities incurred as a result of your use of such websites.*"   Website terms of use, Links and other websites (emphasis added). A copy of Alaska's Website terms of use is attached as Exhibit A to the concurrently filed Declaration of Gayle I. Jenkins.

have the power to enter into contractual relations on behalf of their respective principals." *Id.* In rejecting plaintiff's claim for "breach of any fiduciary relationship," the court found that "such agency relationships [of brokers and attorneys] are recognized at law" and are not based solely on the parties' contractual relationship:

> If [the plaintiff's] allegations under this requirement were sufficient to create an agency, and thus a fiduciary relationship between the parties, then agency relationships would be created in most, if not all, contractual relations where one party manages the affairs of the other, as long as the right to control factor is also met.

*Id.* Much like the plaintiff in *Qwest*, Plaintiff's reliance on the COC to create an agency relationship is misplaced. Plaintiff has not alleged that Alaska had the authority to enter into or modify the legal relations between Plaintiff and AGA. Plaintiff has not alleged that Alaska could acquire travel insurance on Plaintiff's behalf or that Alaska could cancel such insurance. Nor has Plaintiff alleged that Alaska could "stand in the place of [Plaintiff]" (*Qwest*, 2008 WL 3864620, at *5) when interacting with AGA. Rather, Plaintiff's only allegation is that "Plaintiff utilized Alaska's website" to purchase travel insurance from AGA. Compl. ¶¶ 28-36. This is clearly insufficient. Plaintiff's inability to allege that Alaska bought, or was even authorized to buy, travel insurance on her behalf dooms Plaintiff's claim.

Plaintiff's failure to allege that Plaintiff had control over Alaska's actions is also fatal to Plaintiff's claim. One of the "significant test[s] of an agency relationship is the principal's right to control the activities of the agent. [While it] is not essential that the right of control be exercised or that there be actual supervision of the work of the agent; the existence of the right establishes the relationship." *Violette v. Shoup*, 16 Cal. App. 4th 611, 620, 622 (1993) ("absence of an agency relationship" due to lack of any "suggestion that either [plaintiff] had any right to control [the defendant]" was "fatal to [the plaintiffs'] claim that the [defendant] owed them a legal duty") (internal citations and quotation marks omitted). "In the absence of th[is] essential characteristic of the right of control, there is no true agency…." *Edwards v. Freeman*, 34 Cal. 2d 589, 592

1   (1949) ("[T]o hold that one who performs a mere favor for another, without being
2   subject to any legal duty of service and *without assenting to any right of control*, can be
3   an agent … is not the law.") (emphasis added); *see also Anderson*, 84 Cal. App. 2d at
4   741 (contractual statement that a person is an "agent" will be disregarded if the
5   purported agent is "engaged to produce a certain result by means and in a manner of his
6   own choosing," i.e., under his sole control).

7       Plaintiff does not allege that she had the right to control Alaska's activities. To
8   the contrary, Plaintiff alleges that Alaska "compelled" ***Plaintiff to elect*** to purchase or
9   decline travel insurance from AGA. *See* Compl. ¶¶ 4, 30, 35. Such an incongruent
10  position runs counter to agency principles. Simply put, Plaintiff has not properly alleged
11  the existence of an agency relationship under California law.

12      Absent an agency relationship, Plaintiff's claim for breach of fiduciary duty
13  necessarily fails. *See World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F.
14  Supp. 3d 1233, 1235-36 (N.D. Cal. 2014) (dismissing breach of fiduciary duty claim
15  with prejudice because allegation that defendant agreed expressly to act in plaintiff's
16  best interests (i.e., as an agent) was insufficient to establish a fiduciary relationship in
17  the "typical arms-length business dealings [between the parties]") (internal citations and
18  quotations omitted); *see also Violette*, 16 Cal. App. 4th at 623; *Alvarez*, 230 Cal. App.
19  2d at 999-1000; *Trenz v. Sirius Xm Radio, Inc.*, 2015 WL 11658715, at *3 (S.D. Cal.
20  July 13, 2015) (dismissing plaintiff's TCPA claim since "it is not plausible on its face
21  that an agency relationship exists based on the current pleading.").[4] Plaintiff's breach
22  of fiduciary duty claim must therefore be dismissed with prejudice.

23      **C.    Plaintiff's UCL Claim Must Be Dismissed**

24          **1.    Plaintiff Does Not Have Standing to Bring a UCL Claim**

25  _____

26  [4]  To prevail on a breach of fiduciary duty claim, a plaintiff must also allege, among
    other things, "damage proximately caused by the breach." *MH Pillars Ltd. v. Realini*,
27  2017 WL 916414, at *4 (N.D. Cal. Mar. 8, 2017). As explained *infra* at IV.C.1.a,
    Plaintiff failed to allege plausibly that she was damaged because there are no allegations
28  that she could have acquired the travel insurance for less than she paid or that she did
    not get the policy she paid for. Her claim fails for this additional reason.

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus. & Prof. § 17200). Pursuant to UCL § 17204, "private standing is limited to 'any person who has suffered an injury in fact and has lost money or property' as a result of [a violation of the statute]." *Id.* at 884. Thus, in order to have standing to bring a UCL claim, "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, *i.e.*, *economic injury*, and (2) show that that economic injury was the result of, *i.e.*, *caused by*, the unfair [or fraudulent] business practice that is the gravamen of the claim." *Id.* at 885.

### a.     Plaintiff Has Not and Cannot Allege an Injury in Fact

Plaintiff makes the conclusory assertions, unsupported by any facts, that: "[b]ut for Alaska's acts, Plaintiff would have paid less for the AGA travel insurance coverage," that Alaska's acts "caused the products to be sold at a higher price," and caused Plaintiff "to lose money or property," and that, as a result of Alaska's acts, Plaintiff "unwittingly paid more for the travel insurance coverage than [she] otherwise would." Compl. ¶¶ 68-70, 74. Crucially absent are any allegations that Plaintiff could have acquired the travel insurance for less than she paid or that Plaintiff did not get what she paid for—an enforceable insurance policy—at the price she agreed to pay.

*Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583 (2008), involved the precise circumstances at issue here. In *Peterson*, plaintiffs attempted to assert a UCL claim against a phone company which sold cell phones and insurance on the phones and received from the insurance provider a percentage of the cost of the premium on each policy sold. *Id.* at 1586-87. In affirming dismissal of the UCL claim on standing grounds, the court in *Peterson* explained that the plaintiffs:

> do not allege they could have bought the same insurance for a lower price either directly from the insured or from a licensed agent . . . [and] [a]bsent such an allegation, plaintiffs have not shown that they suffered actual economic injury. Rather, they received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price.

12

1    *Id.* at 1591. The same is true here. While the Complaint makes wholly conclusory

2    allegations that "[b]ut for Alaska's acts, Plaintiff would have paid less for the AGA

3    travel insurance coverage," Compl. ¶ 67, it alleges no facts to show that AGA would

4    have sold the policy for less or that Plaintiff could have obtained a comparable policy

5    from another company for less.[5]

6       Indeed, there is a broad body of case law mandating dismissal of UCL claims in

7    the absence of an actual injury in fact. *See*, *e.g.*, *Kauai Scuba Ctr. v. PADI Americas*

8    *Inc.*, 524 F. App'x 344, 346-47 (9th Cir. 2013) (complaint which alleged that plaintiff

9    would have purchased product elsewhere had it known of concealed information and

10   would not have paid the prices it did, failed to allege an injury in fact because "none of

11   [plaintiff's] allegations plausibly show that [] insurance with comparable coverage . . .

12   was available at a lower premium."); *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1094

13   (C.D. Cal. 2015) (holding "that being induced to purchase a product … is not loss of

14   money or property [under the UCL] as long as one still receives the benefit of the

15   bargain.'") (citation omitted); *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545,

16   1554-55 (2011) (allegations insufficient because plaintiff did not allege she could have

17   purchased the product at a lower price from another source nor that "the product was

18   worth less than represented or was different from what the consumer wanted or expected

19   to buy."); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008).[6]

20

21            **b.**     **Plaintiff Has Not and Cannot Allege Actual Reliance or**
                   **Causation**

22

23   [5]   *Cf. Friedman v. AARP Servs., Inc.*, 283 F. Supp. 3d 873 (C.D. Cal. 2018), in which

24   the court held that plaintiff had alleged an injury in fact *because he identified in the Complaint specific comparable insurance policies which could have been procured at a lower price. Id.* at 880. As noted, Plaintiff here utterly fails to identify any comparable

25   insurance which could have been purchased at a lower price.

26   [6]   Plaintiff also lacks Article III standing. As here, the court in *Papasan v. Dometic Corp.*, 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017) was faced with a plaintiff who

27   "allege[d] in a conclusory manner that she 'unknowingly overpaid' for the product." *Id.* at *6. The court held such an allegation insufficient to establish Article III standing

28   because, absent sufficient facts to support the conclusion, "the economic injury alleged here is vague and speculative . . . ." *Id.*

As explained above, a plaintiff seeking to establish standing under the UCL must also demonstrate a loss of money or property "as a result of" the alleged wrongful act. *In re Tobacco II Cases,* 46 Cal. 4th 298, 326 (2009). "The California Supreme Court has held that the phrase 'as a result of' in section 17204 [of the UCL] 'imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action….'" *Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *3 (N.D. Cal. 2013) (quoting *Tobacco II*, 46 Cal. 4th at 326). "To plead actual reliance, the 'plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct.'" *Id.* at *4 (quoting *Tobacco II*, 46 Cal. 4th at 328).

Plaintiff does not allege that she saw or read the representations upon which she purports to premise her UCL claim. Instead, she vaguely alleges that she was "exposed to the misleading information." *See* Compl. ¶ 69. That is not enough. A plaintiff cannot plead actual reliance if he or she did not see and read the allegedly misleading statements upon which the UCL claim purports to be premised. As the court explained in *Letizia v. Facebook, Inc.*, 267 F. Supp. 3d 1235, 1243 (N.D. Cal. 2017):

> [I]n order for a UCL claim to survive a motion to dismiss, a plaintiff must satisfy the actual-reliance requirement, which means the plaintiff must allege that he or she saw the specific misrepresentation at issue and actually relied on it. A mere factual nexus causation between a defendant's conduct and the plaintiff's injury is not enough to support a UCL claim.

Similarly, in *Figy*, the court stated that because the plaintiff did not allege he saw the misleading label before he made his purchase, "plaintiff has failed to allege sufficient facts establishing that he relied" and further made clear that "although there may be an inference of reliance upon a showing of materiality, to adequately allege reliance, a plaintiff must still at a minimum allege he saw the representation at issue." *Figy*, 2013 WL 6169503, at *4;[7] *see also Philips v. Ford Motor Co.*, 2015 WL 4111448, at *14 (N.D. Cal. July 17, 2015) ("a plaintiff has no standing to assert [UCL] claims

---

[7]   While there can be an inference of reliance in certain circumstances upon a showing of materiality, as demonstrated *infra* at IV.C.2, the alleged representations and omissions by Alaska were not material as a matter of law.

1   based on statements he did not view."); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th

2   1350, 1363 (2010) (UCL claim cannot be based on representations plaintiff did not read

3   and therefore could not have relied upon); *In re iPhone Application Litig.*, 6 F. Supp.

4   3d 1004, 1022-25 (N.D. Cal. 2013) (plaintiff's receipt of materials containing

5   misrepresentations or access to such materials is insufficient to establish standing given

6   actual reliance requirement).

7       Nor do the allegations of the Complaint establish that the alleged statements or

8   omissions by Alaska were the "immediate cause" of Plaintiff's alleged loss. Plaintiff

9   agreed to buy the specific insurance at a specific price. Plaintiff thus relied on the quality

10  and cost of the insurance when making her purchase, not on what other costs might

11  allegedly be included within that price. *Williamson v. Reinault-Thomas Corp.*, 2012 WL

12  1438812 (N.D. Cal. Apr. 25, 2012) is squarely on point. There, as here, plaintiff

13  attempted to premise a UCL claim on allegations that the defendant charged a hidden

14  fee which was part of an agreed-upon price for the product and services. *Id.* at *8. In

15  holding that "the factual allegations [] do not support a plausible inference that the

16  alleged omission was an 'immediate cause' [of Plaintiff's purchase]," the court

17  explained that the parties agreed to a specific amount that plaintiff was willing to pay

18  and "[t]hat is the amount Plaintiff actually paid" and thus that "[t]he terms that Plaintiff

19  relied on were price and quality, not on a [] fee that was subsumed into the overall

20  price." *Id.*

21      Because Plaintiff has not and cannot allege that she suffered an actual injury in

22  fact, that she actually relied on the alleged representations or omissions by Alaska, or

23  that those alleged representations or omissions were the immediate cause of a loss, she

24  lacks standing to bring her UCL claim and the claim must be dismissed with prejudice.

### 2.    Plaintiff Fails to State a Claim Under the UCL

26      California courts routinely dismiss claims under the UCL for failure to state a

27  claim. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1117 (N.D. Cal. 2016);

28  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012). Here, Plaintiff

15

1   has failed to allege a claim under either the "fraudulent" or "unfair" prong of the UCL,

2   and therefore, her claim must be dismissed.[8]

3           **a.    Alaska's Alleged Representations and Omissions Were
                    Not Fraudulent or Deceptive as a Matter of Law**

4

5           To plausibly allege a UCL claim based on a purported misrepresentation or

6   omission, a plaintiff "must show that 'members of the public [were] likely to be

7   deceived.'" *Warner*, 105 F. Supp. 3d at 1092 (citation omitted). In *Lavie v. Proctor &

8   Gamble Co.*, 105 Cal. App. 4th 496 (2003), the court explained that:

9           "Likely to deceive" implies more than a mere possibility that the [subject
            materials] might conceivably be misunderstood by some few consumers
10          viewing it in an unreasonable manner. Rather, the phrase indicates that the
            [materials are] such that it is probable that a significant portion of the
11          general consuming public or of targeted consumers, acting reasonably in
            the circumstances, could be misled.

12  *Id.* at 508. *See also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (same).

13          First, there is no misrepresentation by Alaska. The affirmative representations

14  Plaintiff attempts to attribute to Alaska, *see* Compl. ¶¶ 4, 23-25, and 77, are accurate

15  and truthful because AGA is licensed to sell insurance and is the "licensed producer"

16  and "administrator" of the insurance plans, and as such, offers, sells and underwrites

17  the insurance product. The Complaint thus relies on undisputedly accurate statements

18  in attempting (but failing) to show that Alaska created a false impression with regard to

19  the travel insurance. *See id.*  Indeed, there are no facts pled or which could be pled to

20  demonstrate otherwise. Accurate, truthful statements are not actionable. *See, e.g., Stuart*

21  *v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) (affirming

22  dismissal with prejudice of UCL claims based on accurate statements and omissions not

23  likely to deceive reasonable consumers).

24          Second, "courts can and do sustain demurrers on UCL claims when the facts

25  alleged fail as a matter of law to show such a likelihood [of deception]." *Rubenstein v.*

26  _____

27  [8]  The grounds for dismissal set forth in IV.C.2.a, b, d, and e apply to both the fraudulent
     prong and the unfair prong of the UCL claim. The ground for dismissal set forth in C.2.c
28  provides an additional reason why the unfair prong of the UCL claim fails to state a
     claim.

*The Gap, Inc.*, 14 Cal. App. 5th 870, 877 (2017). Courts have found no deception as a matter of law and have dismissed UCL claims with prejudice where, as here, a defendant fails to disclose a profit or fee which is included within the purchase price the plaintiff agreed to pay. *See, e.g., Fabozzi v. Stubhub, Inc.*, 2012 WL 506330, at *6 (N.D. Cal. Feb. 15, 2012) ("Plaintiff agreed to pay the purchase price he actually paid, so there was no deception in the price he was required to pay."); *Reinault-Thomas Corp.*, 2012 WL 1438812, at *10, 12 (no deception "where Plaintiff paid the precise amount the Defendant's clerk quoted").

Third, a reasonable consumer does not "disregard 'well-known facts of life' and assume things about the products *other than* what the statement actually says." *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (emphasis in original) (citations omitted); *Williamson v. Apple, Inc.*, 2012 WL 3835104, at *6 (N.D. Cal. Sept. 4, 2012) (UCL claim cannot be predicated on alleged deceptive statements or omissions belied by well-known facts). It is a well-known fact of e-commerce that the opportunity to advertise and market on another's website costs money. Indeed, affiliate marketing relationships, including advertisements that appear on websites, are routine. A reasonable consumer surely understands that an advertisement for a third-party's product on a website is paid for by that third-party. When scrolling through a feed or browsing a website, a reasonable consumer does not believe that the advertiser has gained access to another's website for free. Indeed, a reasonable consumer also understands that travel insurance is only beneficial to those who are traveling which renders advertisements and marketing on travel sites such as alaskaairlines.com the most productive place to advertise—and therefore a valuable commodity that travel insurers such as AGA will pay for. That Alaska did not disclose that it was earning money in these circumstances is not deceptive as a matter of law because no reasonable consumer, much less a "significant portion" of reasonable consumers, would believe otherwise. *See McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1395 (2005) (affirming dismissal of UCL claim with prejudice, because, among other things,

1   "Defendants are engaged in a business for a profit. Their failure to disclose their own

2   costs or profit margins is not, on its face, unfair."); *Fabozzi*, 2012 WL 506330, at *6

3   ("That someone would attempt to make a profit . . . is not deceptive; it is standard

4   business practice.").

5        It is implausible that "a significant portion of the general consuming public or of

6   targeted consumers, acting reasonably in the circumstances," would believe Alaska

7   receives no compensation for providing advertising services on its website to a third-

8   party insurance provider. Thus, regardless of what Plaintiff claims she may or may not

9   have understood about Alaska's relationship with AGA, Alaska's alleged

10  representations and omissions are not fraudulent or deceptive as a matter of law.[9]

11              **b.      Plaintiff Fails to Allege an Actionable Omission**

12       Plaintiff's allegations confirm that her UCL claim is based on an omission rather

13  than an affirmative representation.[10] While omissions may "be the basis of claims under

14  [the UCL] . . . 'to be actionable the omission must be contrary to a representation

15  actually made by the defendant, or *an omission of a fact defendant was obligated to*

16  *disclose*.'" *Hodson v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis in

17  original; citation omitted). Plaintiff fails to allege either.

18

19  [9]   The Complaint cites to *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1056 (9th Cir. 2017)
    in purported support of the naked legal conclusion that "Alaska's conduct is deceptive
20  within the meaning of the UCL's fraudulent prong." Compl. ¶ 75. In *Friedman*, the
    defendant affirmatively misrepresented the nature of a fee it was charging over and
21  above what plaintiff had agreed to pay as the premium. *Id.* at 1050. Here, Plaintiff paid
    an agreed-upon price for an agreed-upon insurance policy and got what she paid for.
22  Alaska made no representations whatsoever regarding the travel insurance offer.
    Significantly, the court in *Friedman* also held that the plaintiff had adequately alleged
23  that the misrepresentations were material precisely because, unlike here, the fee was in
    addition to the premium payment. *Id.* Conversely, it is "obviously unimportant" (i.e.,
24  not material) to know that an undisclosed fee was charged where, as here, it does not
    change the agreed-upon price.
25  [10]  *See, e.g.,* Compl. ¶ 10 (deceptive act was "receipt of undisclosed remuneration); ¶ 25
    ("Alaska's failure to disclose the remuneration it receives on the sale of travel insurance
26  products purchased by Alaska passengers amounts to a deceptive and unfair trade
    practice"); ¶ 70 (Plaintiff injured as a result of undisclosed remuneration to Alaska); ¶
27  72 (Alaska deceived its passengers by "omitting the [sic] disclose its remuneration from
    AGA"); ¶ 74 (Plaintiff paid more for the insurance "[a]s a consequence of Alaska's
28  failure to disclose"); ¶ 76 ("[r]eliance on Alaska's omission . . . is reasonably inferred").

First, Plaintiff has not and cannot assert that the alleged omission by Alaska that it was being compensated in connection with the presentation of a travel insurance offer on its website was contrary to any representation made by Alaska.

Second, Plaintiff fails to allege any basis upon which to impose a duty of disclosure on Alaska. Plaintiff attempts to avoid this issue by alleging that Alaska assumed a fiduciary duty to its customer and therefore had a duty to disclose this information. Thus, Plaintiff draws the unsupported legal conclusion that:

> [i]n voluntarily assuming agency duties owed to passengers limited to the context of procuring third party insurance products, Alaska owed a fiduciary duty to disclose to Alaska passengers, including Plaintiff, any arrangement it has with AGA that materially affected the price of the travel insurance product purchased through AGA.

Compl. ¶ 20; *see also id.*, ¶¶ 19, 21-22 (similar allegations). However, as demonstrated *supra* at IV.B, the Complaint fails to allege a fiduciary relationship arose between Plaintiff and Alaska from which any disclosure obligations might stem.

Absent a duty to disclose, Plaintiff's UCL claim premised on Alaska's purported omissions is foreclosed as a matter of law. *See Fabozzi*, 2012 WL 506330, at *6 ("failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone with the meaning of the UCL.'") (citation omitted); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008) (same).

### c.   Plaintiff Fails to Allege Any "Unfair" Business Practices

Plaintiff's attempt to allege a violation of the unfair prong of the UCL, *see* Compl. ¶¶ 77-80, fails for an additional reason. In *Allen v. Hyland's Inc.*, 2019 WL 2142843 (9th Cir. 2019), the Ninth Circuit stated that:

> The UCL's unfair prong can apply to business practices that are against public policy, that are "immoral, unethical, oppressive, unscrupulous or substantially injurious," or that cause unforeseeable injuries to consumers that are not outweighed by countervailing benefits.

*Id.* at *3. *See also Elias*, 903 F. Supp. 2d at 858 ("'A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs

1   its benefits.'") (citation omitted).

2          Here, Plaintiff simply parrots these requirements without supplying any

3   necessary factual support. Instead, Plaintiff makes the conclusory assertion that

4   Alaska's acts were unfair under the UCL because "the utility of Alaska's conduct (zero)

5   is outweighed by the gravity of harm to Plaintiff," Alaska's conduct "offended an

6   established public policy," and "Alaska engaged in immoral, unethical, oppressive, and

7   unscrupulous activities." Compl. ¶ 79.

8          Nowhere, however, does the Complaint allege how consumers derive "zero"

9   benefit from being able to purchase travel insurance through Alaska's website.

10  Specifically, Plaintiff never alleges that: (1) the travel insurance did not provide the

11  services advertised; (2) she suffered any "substantially injurious" effects or any "grave

12  harm" from purchasing travel insurance; or (3) she was unable to use the travel

13  insurance policy she purchased. Alaska simply provides customers with an opportunity

14  to purchase travel insurance at their option from a third-party insurer at a price that they

15  are free to accept or reject and shop for comparable coverage elsewhere. Nor, as

16  explained above, does Plaintiff allege actual harm to herself, much less harm that is

17  outweighed by the countervailing benefit of the valid and enforceable insurance policy

18  she received. Plaintiff's allegations are insufficient as a matter of law to establish an

19  "unfair" practice by Alaska. *See Elias*, 903 F. Supp. 2d at 858 (UCL claim dismissed

20  where complaint "does not allege any basis for concluding that [Plaintiff's] injury

21  outweighs the reasons, justifications and motives of Defendants."). Moreover, a "failure to

22  disclose information [defendant] had no duty to disclose in the first place is not

23  substantially injurious, immoral or unethical." *Hodson*, 891 F.3d at 867.

24         Nor does the Complaint adequately allege conduct that is "against public policy;"[11]

25  _____

26  [11]  In *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999), the California Supreme Court explained unfairness under the UCL "must be tethered to

27  some legislatively declared policy…." *Id.* at 185. "To determine whether something is sufficiently 'tethered' to a legislative policy for the purposes of the unfair prong,

28  California courts require a close nexus between the challenged act and the legislative policy." *Hodson*, 891 F.3d at 866.

it fails to identify any "actual policy based on a legal provision that the defendant violated." *Hodges v. Apple Inc.*, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013); *Elias*, 903 F. Supp. 2d at 858 ("[a]lthough [plaintiff] makes conclusory statements that HP's alleged conduct is unfair, he does not reference any established public policy that HP's actions have violated . . ."); *Buller*, 160 Cal. App. 4th at 991 (unfair prong not established where "[plaintiff] makes no argument [] that his allegations are directly connected to any legislatively declared policy . . .").[12]

### d.   Plaintiff Has No Standing to Seek Injunctive Relief[13]

To have standing to seek "injunctive relief, which is a prospective remedy, the threat of injury 'must be actual and imminent, not conjectural or hypothetical.' In other words, the 'threatened injury must be *certainly impending* to constitute injury in fact' and "allegations of *possible* future injury are not sufficient.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (emphasis in original) (citations omitted). In *Davidson*, the court rejected the notion that "'injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false,'" *id.* at 971, and suggested that "[i]n some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labelling in the future, and so will not purchase the product although she would like to." *Id.* at 969-70 (emphasis in original; citation omitted). The Complaint borrows this concept from *Davidson* in a futile effort to establish that Plaintiff has standing to seek injunctive relief. *See* Compl. ¶ 72.

Plaintiff's reliance on *Davidson* is misplaced. Even assuming case law regarding product labels is apt, here, unlike *Davidson* where there was only one source for the

---

[12] In addition, as here, where the facts underlying the UCL "unfair" prong entirely overlap with the "fraudulent" prong, the unfair claim fails if the fraudulent claim fails. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017).

[13] Because a UCL claim is "equitable in nature" (*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)), its only remedies are restitution and injunctive relief. *Id.* Thus, if Plaintiff has an adequate remedy at law, she cannot seek relief under the UCL. *See, e.g., McAdam v. State Nat'l Ins. Co., Inc.*, 2012 WL 4364655, at *2, 3 (S.D. Cal. Sep. 24, 2012).

product at issue and no way to determine the veracity of the label, Plaintiff can purchase the same travel insurance directly from AGA or another travel insurer. And, she has the ability to determine whether the price being charged for a policy purchased through the Alaska website is indeed inflated (which it is not). In these circumstances, there is no "threat of future harm" necessary to establish standing to seek injunctive relief. *See, e.g., Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018) (no future injury where plaintiff "has knowledge that enables her to make an appropriate choice"); *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sep. 25, 2018) (distinguishing *Davidson* and holding that plaintiff lacked standing to seek injunctive relief where there was "no future risk that plaintiff will be misled"); *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004) (plaintiff who no longer had insurance policy with defendants "and therefore is not personally threatened by their conduct" did not have standing to seek injunctive relief under the UCL).

### e. The Complaint Does Not Allege Fraud with the Particularity Required by Fed. R. Civ. P. 9(b)

The particularity requirement of Rule 9(b) applies to both the fraudulent and unfair prongs of Plaintiff's UCL claim because both are premised on Alaska's alleged fraudulent or deceptive conduct. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125, 1127-28 (9th Cir. 2009). Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the alleged fraudulent conduct, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1106, and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (superseded by statute on other grounds). The Complaint fails to meet the heightened pleading standard of Rule 9(b) because, among other things, it does not set forth the time period during which the alleged misrepresentations and omissions were made and fails to state which specific statements Plaintiff personally saw. *See, e.g., Letizia*, 267 F. Supp. 3d at 1243-45 (failure to allege sufficient facts to

22

demonstrate that Plaintiff saw alleged misrepresentations at issue "dooms [her] UCL claim under Rule 9(b)'s heightened pleading requirements" and further explaining that Rule 9(b) requires plaintiff to allege "the time period in which the [alleged misrepresentations] appeared"). The claim also fails to explain with sufficient particularity (and cannot explain) why the alleged statements on Alaska's website were false. For all of these reasons, Plaintiff's UCL claim should be dismissed with prejudice.

### D.   The Nationwide Class Allegations Should Be Dismissed
#### 1.   Material Variations in State Laws Make Nationwide Class Treatment Unmanageable

Plaintiff purports to represent a nationwide class for her breach of fiduciary duty claim. Compl. ¶ 40. However, numerous courts have held at the pleadings stage that a nationwide class is inappropriate for state law claims, saving both the parties and the courts time and expense in litigating class issues that were doomed to fail from the beginning. *See, e.g., Cover v. Windsor Surry Co.*, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) (collecting cases); *Banks v. Nissan N. Am., Inc.*, 2012 WL 8969415, at *1 (N.D. Cal. Mar. 20, 2012).

A class cannot be certified where material variations in state laws make nationwide class treatment unmanageable. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589-94 (9th Cir. 2012) (material variations among the consumer protection laws of the states undermined predominance and precluded application of California law to a nationwide class). Here, fiduciary duty claims vary by state regarding what constitutes a fiduciary relationship and there is no single standard governing liability. *See Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690-91 (D. Kan. 2007) (discussing variations in state law). The statutes of limitations also vary widely which "pose[s] a significant obstacle to class certification." *Marshall v. H & R Block Tax Servs. Inc.*, 270 F.R.D. 400, 408 (S.D. Ill. 2010). Because of the material differences between states' laws, Plaintiff's claim for breach of fiduciary duty fails as a nationwide class.[14]

---

[14] Individual states' interests in applying their own law precludes uniform application of California law to the breach of fiduciary duty claim. California law may only be

Where, as here, it is clear from the pleadings that choice-of-law issues preclude certifying a nationwide class, the Court should dismiss those allegations. *Davison v. Kia Motors Am., Inc.*, 2015 WL 3970502, at *2-3 (C.D. Cal. June 29, 2015) (dismissing nationwide state law class claims with prejudice at motion to dismiss stage and holding that "each putative class member's claims here must be governed by and decided under the law of the state where the injury took place"); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (dismissing nationwide state law class claims on motion to dismiss because each putative class member's claim should be governed by laws of "jurisdiction in which transaction took place."). Accordingly, Plaintiff's nationwide class allegations should be dismissed.

### 2. Non-Resident Absentee Class Members' Claims Should Be Dismissed for Lack of Standing and Personal Jurisdiction

A court "must be sure of its own jurisdiction before getting to the merits." *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (citation omitted). This Court lacks jurisdiction over the claims of the non-California plaintiffs, which fail for lack of standing and personal jurisdiction over Alaska.

The Complaint necessarily invokes the breach of fiduciary duty laws of every state in which the putative class members reside or completed their insurance transactions, yet it includes no named plaintiffs from outside California. *See* Compl. ¶¶ 58-63. This creates a threshold jurisdictional issue because a named plaintiff lacks Article III standing to assert claims under the laws of the states in which she does not reside. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) (finding that "named Plaintiffs do not have standing to assert claims from states in which they do not reside or did not purchase their mobile device," and granting motion to dismiss

---

applied on a classwide basis if the interests of other states do not outweigh California's interest in having its law applied. *Mazza*, 666 F.3d at 590. Here, each state where a consumer purchased travel insurance "has an interest in having its law applied to its resident claimants." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001); *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 314 (5th Cir. 2000) (all "51 relevant jurisdictions are likely to be interested in ensuring that their consumers are adequately compensated in cases of economic loss").

24

those claims); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009). Indeed, the failure to specify which state(s)' breach of fiduciary duty laws governs by itself mandates dismissal. *See In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2018 WL 1576457, at *4 (N.D. Cal. Mar. 30, 2018) ("due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal [of nationwide class claims].") This Court should therefore dismiss the fiduciary duty claims of non-resident absentee class members.

In addition, under *Bristol-Myers Squibb v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779-80 (2017) this Court should not exercise specific personal jurisdiction over nonresident Alaska, *see* Compl. ¶ 13, where the proposed nationwide class members' claims bear no connection to California.[15]

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: August 9, 2019                    WINSTON & STRAWN LLP


By:   *s/ Gayle I. Jenkins*
        Gayle I. Jenkins
        Attorneys for Defendant
        ALASKA AIRLINES, INC.

---

[15] As the Supreme Court has warned, courts inquiring into personal jurisdiction must not run afoul of the Rules Enabling Act, which provides that procedural rules "shall not abridge, enlarge[,] or modify any substantive right." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting 28 U.S.C. § 2072(b)). A plaintiff cannot deprive a defendant of due-process protections recognized in *Bristol-Myers* by styling a case as a class action under Rule 23. *See also Mussat v. IQVIA Inc*., 2018 WL 5311903, at *6 (N.D. Ill. Oct. 26, 2018) ("the Rules Enabling Act requires "consistent and uniform application of defendants' due process rights" between "class actions under Rule 23" and "individual or mass actions."); *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916 at *4 n.4 (D. Ariz. Oct. 2, 2017) ("The Court also notes that it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class.").

25